**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DWAYNE HARRIS,

                              Plaintiff,

              - v -                                    Civ. No. 9:20-CV-1482
                                                                    (GTS/DJS)

TRAVERS and SCHROYER,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

DWAYNE HARRIS
Plaintiff, *Pro Se*
Brooklyn, New York 11233

HON. LETITIA JAMES                            NICHOLAS W. DORANDO, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

        *Pro se* Plaintiff Dwayne Harris brings this civil rights action, pursuant to 42 U.S.C.

§ 1983, alleging that Defendants violated his constitutional rights while he was in the

custody of the Department of Corrections and Community Supervision ("DOCCS"). *See*

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c)

Dkt. No. 1, Compl.   Defendants have now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a), seeking to dismiss the Complaint in its entirety.  Dkt. No. 48.  Plaintiff opposes the Motion.  Dkt. No. 54, Pl.'s Opp.[2]  Defendants have filed a reply.  Dkt. No. 57.

Defendants seek summary judgment on three grounds: 1) the Complaint is barred by the applicable statute of limitations; 2) Plaintiff failed to exhaust his administrative remedies; and 3) the merits of the claims.   For the reasons that follow, the Court recommends Defendants' Motion for Summary Judgment be **GRANTED** based on the untimeliness of the action with respect to Defendant Travers and Plaintiff's failure to properly exhaust his administrative remedies.[3]

## I. BACKGROUND

Plaintiff's Complaint is dated September 10, 2020.  The allegations date back to March 2014 and concern the alleged denial of proper medical care while Plaintiff was housed at Upstate Correctional Facility.  *See* Dkt. No. 11 at pp. 4-7 (characterizing the nature of Plaintiff's factual claims); Dkt. No. 48-3, Pl.'s Dep. at pp. 20-21 (discussing

---

[2] Plaintiff filed numerous exhibits in opposition to the Motion.  *See* Dkt. Nos. 54-1 & 54-2.  Those exhibits are cited throughout this opinion as "Pl.'s Ex." followed by the exhibit designation provided by Plaintiff.

[3] Given these recommendations, the Court does not reach the merits of Plaintiff's claims.  Were the Court to do so, it would recommend that the Motion be denied.  Defendants have submitted voluminous medical records outlining Plaintiff's care while in DOCCS custody for many years.  Defendant Travers, however, has offered no sworn statement regarding the treatment of Plaintiff.  Defendant Schroyer does offer a Declaration but it only briefly addresses his treatment of Plaintiff.  Absent some explanation from medical professionals about the nature of Plaintiff's conditions and the treatment that was provided to him, this Court is left with insufficient information from which it can judge the hundreds of pages of medical records and the merits of the Motion.

initial claims dating to 2014).   The Complaint alleges specific interactions with Defendants Travers and Schroyer at Upstate in March 2014.  Compl. at ¶¶ 13, 15, & 16. Plaintiff then sets forth generalized allegations that he sought, but was denied, medical treatment to address pain in his legs, feet, back, and arm throughout 2014, 2015, 2016, and 2017.  *Id.* at ¶ 19; *see generally* Pl.'s Dep.   The Complaint then discusses Dr. Schroyer's diagnosing Plaintiff with arthritis, including directing medication and physical therapy treatment for Plaintiff.  *Id.* at ¶¶ 20-22.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party

has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

Defendants seek summary judgment arguing that Plaintiff's allegations are untimely, that he failed to exhaust his administrative remedies, and that dismissal on the merits is appropriate. Dkt. No. 48-2, Defs.' Mem. of Law at pp. 3-11. For the reasons which follow, the Court recommends dismissing all claims against Defendant Travers as untimely and dismissing the remainder of the Complaint based on Plaintiff's failure to exhaust.

### A. Statute of Limitations

Defendants first seek summary judgment based on the purported untimeliness of Plaintiff's Complaint. Defs.' Mem. of Law at pp. 3-5. The District Court's initial review order under 28 U.S.C. §§ 1915(e) & 1915A recognized the potential untimeliness of certain claims. Dkt. No. 11 at pp. 17-19.

Plaintiff's Complaint was received by the Court on December 3, 2020. Compl. at p. 17. Under the prisoner mailbox rule, however, it is not that date, but the date Plaintiff's Complaint was "turned over to prison officials" for mailing that provides the controlling date for statute of limitations purposes. *Houston v. Lack*, 487 U.S. 266, 270 (1988); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *opinion modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). That date is unclear on the record, but the Complaint is dated September 10, 2020.

Compl. at p. 16.  Given that fact, Judge Suddaby has already concluded that "[f]ollowing the mailbox rule and applying the presumption that Plaintiff delivered the Complaint to a prison official on the date it was signed, Plaintiff filed his Complaint in this action for statute of limitations purposes on September 10, 2020."  Dkt. No. 11 at p. 18.[4]

The statute of limitations for a section 1983 action in New York is three years. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).  Generally, therefore, only claims related to Plaintiff's medical treatment between September 10, 2017 and September 10, 2020 would have been timely brought.  As Judge Suddaby previously recognized, however, "the continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."  *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009); Dkt. No. 11 at pp. 18-19.  The doctrine, however, is available only when "some non-time-barred acts" are alleged.  *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see also Williams v. Annucci*, 2021 WL 4775970, at *3 (N.D.N.Y. Oct. 13, 2021) ("To assert a timely claim under the continuing violation doctrine, a plaintiff must allege some non-time-barred acts contributing to the alleged violation.") (internal quotation omitted). "Moreover, where a plaintiff brings a claim against multiple defendants, he must allege a

---

[4] Defendants' reliance on the December filing date, Defs.' Mem. of Law at p. 4, therefore, is contrary to Judge Suddaby's express prior finding.

non-time-barred act as to *each* defendant." *Williams v. Annucci*, 2021 WL 4775970, at *3 n.4 (citing cases).

With respect to Defendant Travers, it appears that the last time Plaintiff was treated by Nurse Travers was in 2016. Pl.'s Dep. at pp. 38-39. Plaintiff testified at his deposition:

> Q. So in 2017, you did [not] have any encounters with nurse Travers?
> A. No, I haven't.
> Q. And you left Upstate Correctional Facility in February 2018; is that correct?
> A. Yes.
> Q. Did you see nurse Travers at all in January and February of 2018, before you left the facility?
> A. Not that I recall.

Pl.'s Dep. at p. 39.

The latest treatment Plaintiff could have received from Travers was in 2016, which would be outside the three year limitations period measured from September 2020. Plaintiff's 2020 Complaint against Travers, therefore, is untimely. Also, having failed to allege any timely claim against her, the continuing violation doctrine does not apply to Plaintiff's claims against Travers and the Court recommends that her Motion for Summary Judgment be granted.

With respect to Defendant Schroyer, however, the Court recommends that the Motion on timeliness grounds be denied. Dr. Schroyer indicates that he saw Plaintiff on September 14, 2017. Dkt. No. 48-4, Schroyer Decl. at ¶ 4. At the very least, any claim Plaintiff might be asserting regarding Schroyer's treatment or failure to treat him that day is timely. Plaintiff alleges in the Complaint that Defendants, including Schroyer, engaged

in a "systematic practice" of indifference to his medical needs.  Compl. at ¶ 29.  That allegation is enough given that Plaintiff has alleged a timely claim against Schroyer to potentially implicate the continuing violation doctrine.[5]

Accordingly, the Court recommends that the Motion based on timeliness be granted in part and denied in part.

## B. Exhaustion of Administrative Remedies

### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).  Furthermore, § 1997e(a) requires

---

[5] The Court notes that Defendants do not address the applicability of the doctrine in the Motion despite Judge Suddaby having specifically raised the issue.

"proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of an alleged occurrence." *Id.* at § 701.5(a)(1). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v.*

*Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### 2. The Record Regarding Exhaustion

Defendants offer the Declaration of Rachael Seguin to establish that no grievances filed by Plaintiff regarding alleged improper medical treatment or the outright denial of medical care emanating from Upstate Correctional Facility were ever appealed to CORC. Dkt. No. 48-5, Seguin Decl. at ¶ 26 & Ex. B. Plaintiff does not allege otherwise. At his deposition, he testified to filing only a single grievance regarding Travers and that it was filed in 2014. Pl.'s Dep. at pp. 64-65. CORC has no record of an appeal of that grievance. Seguin Decl. at Ex. B. In opposing the Motion, Plaintiff does not provide evidence of any grievance being appealed to CORC. Despite testimony about filing multiple grievances, Pl.'s Dep. at pp. 64, 70, & 71, Plaintiff offers specific evidence of only one grievance regarding these issues, from July 2014, and there is no evidence in the record that it was ever appealed. *See* Pl.'s Ex. B; Seguin Decl. at Ex. B. The record is, therefore, devoid of any grievance having been filed with DOCCS regarding what would be timely claims of medical indifference or of any such grievance being appealed to CORC. The failure to properly appeal grievances to CORC means that Plaintiff failed to properly exhaust his administrative remedies before filing this action. *Ruiz v. Link*, 2022 WL 3020254, at *4 (S.D.N.Y. July 29, 2022); *Valverde v. Folks*, 2022 WL 836310, at *6 (S.D.N.Y. Mar. 21, 2022), *aff'd*, 2023 WL 2439876 (2d Cir. Mar. 10, 2023).

Plaintiff's opposition does contend that he personally spoke with medical staff and wrote letters to DOCCS officials and others about his allegations regarding lack of proper treatment.  *See*, *e.g.*, Pl.'s Exs. R, V, & Z.  This does not satisfy the PLRA's exhaustion requirement.  "Informal complaints to prison officials do not constitute proper exhaustion."  *Hale v. Rao*, 768 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (citing *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007)).

### 3. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate.  *Ross v. Blake*, 578 U.S. at 642.  As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.*  The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 643-44. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*.  *Martin v. Wyckoff*, 2018 WL 7356771, at *5

- 11 -

(N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019). The record establishes that none of the *Ross* exceptions are applicable here.

Plaintiff fully exhausted an administrative grievance through the DOCCS grievance program on at least one other occasion. Seguin Decl. at Ex. B. "This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here." *Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018).

Nor has Plaintiff raised any triable question of fact as to the applicability of the third *Ross* exception. In opposing the Motion, Plaintiff maintains that he did not file grievances because Schroyer told him if he stopped writing grievances he might be able to get some help from staff. Pl.'s Opp. at p. 3. While Plaintiff claims "[t]his threat prevented [him] from filing even more grievances," *id.*, during his deposition he specifically admitted that Schroyer had never told him not to file grievances. Pl.'s Dep. at p. 63. And despite this purported threat, Plaintiff testified at his deposition about multiple grievances he claimed to have filed in 2014, 2017, and 2018 regarding medical issues. *Id.* at pp. 64, 70, & 71. Plaintiff bears of burden of establishing that facility staff thwarted his ability to grieve these claims, *Saeli v. Chautauqua Cnty., NY*, 36 F.4th 445,

456 n.6 (2d Cir. 2022), and conclusory allegations are insufficient to carry that burden. *Hicks v. Adams*, 692 F. App'x 647, 648 (2d Cir. 2017).  Here, Plaintiff's assertion of Schroyer's perceived threat is conclusory and contrary to Plaintiff's own actions regarding the purported filing of grievances.  He, therefore, has not established the presence of a question of fact as to the third *Ross* exception.  *See*, *e.g.*, *Perez-Lopez v. Bialor*, 2023 WL 2682922, at *4 (E.D.N.Y. Mar. 29, 2023) ("Plaintiff's single allegation that Defendant . . . gave him some sort of vague advice not to file a grievance" was conclusory and "insufficient to raise a genuine dispute of material fact."); *McGee v. Haigh*, 2015 WL 1456612, at *6 (N.D.N.Y. Mar. 30, 2015) (no question of fact about intimidation when Plaintiff continued to file grievances despite alleged threats).

For these reasons, the Court recommends that the Defendant's Motion for Summary Judgment be granted based on Plaintiff's failure to exhaust his administrative remedies.

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 48) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  June 12, 2023
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).